UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF )
GEORGETOWN SUITES HOTEL )
1111 30th STREET, NW )
ROOM 311 )
WASHINGTON, DC )         Misc. No.

**<u>Affidavit in Support of a Seizure Warrant</u>**

I, Angela Page, being duly sworn state as follows:

**Introduction**

1.        I am a Special Agent (SA) with the U.S. Department of State, Diplomatic Security

Service (DSS).  I am assigned to the DSS Criminal Investigative Liaison Branch at DSS

Headquarters, and work as a DSS liaison agent located at the U.S. Peace Corps, Office of

Inspector General, in Washington, DC.  I have been employed at DSS as a Special Agent since

April 2009.  From 1995 to April 2009, I was a Police Officer, Detective, and Sergeant with the

Nashville Police Department, Nashville, Tennessee.  My duties include conducting criminal

investigations into violent crimes and sexual assaults involving United States government

personnel stationed at diplomatic and consular missions both domestic and abroad.  I have

received training in conducting criminal investigations from the Federal Law Enforcement

Training Center and specialized training regarding violent crime and sexual assault

investigations from a variety of Federal and State law enforcement agencies.  I have a Bachelor's

degree in Criminal Justice from Middle Tennessee State University and a Master's degree in

Business and Public Service Management from Cumberland University.

2.      I present this affidavit in support of a search warrant for the real property and premises

described as the Georgetown Suites Hotel, 1111 30th Street, NW, Room 311, Washington DC, as

more fully described in Attachment A, to search for and seize items, as more fully described in

Attachment B.  Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, I seek authority

to search this property for evidence and instrumentalities related to the allegations against

Nicholas Langford for committing aggravated sexual abuse, sexual abuse, and abusive sexual

contact with C.O., a female United States Citizen, in violation of 18 U.S.C. § 2241, 18 U.S.C. §

2242, and 18 U.S.C. § 2244.

3.      I have not included every fact I know about Nicholas Langford and his illegal activities in

this affidavit; rather, I have included those facts I believe are needed to demonstrate probable

cause for the warrant I seek.  The information in this affidavit is based on my personal

knowledge and observations, on information conveyed to me by other law enforcement officials,

and on my review of records and documents relevant to Nicholas Langford's activities.

**Pertinent Statutes**

4.      I present this affidavit in support of a search warrant for evidence relating to an alleged

sexual assault committed by Nicholas Langford, in violation of:

Title 18, United States Code, Section 2241- Aggravated sexual abuse (a) By Force or

Threat.— Whoever, in the special maritime and territorial jurisdiction of the United States . . .

knowingly causes another person to engage in a sexual act—

(1) by using force against that other person . . . or attempts to do so, shall be fined under this title,

imprisoned for any term of years or life, or both.

Title 18, United States Code, Section 2242- Sexual abuse —Whoever, in the special

maritime and territorial jurisdiction of the United States . . . knowingly—

2

(1) causes another person to engage in a sexual act by threatening or placing that other person in fear. . . or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

Title 18, United States Code, Section 2246 – Definitions for Chapter.  As used in this Chapter—

(2) the term "sexual act" means—

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight. . .

Title 18, United States Code, Section 2244- Abusive sexual contact (a) Sexual Conduct in Circumstances Where Sexual Acts Are Punished by This Chapter.— Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in or causes sexual contact with or by another person, if to do so would violate— (1) subsection (a) or (b) of section 2241 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than ten years, or both.

Title 18, United States Code, Section 2246 (3) defines the term "sexual contact" as the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

Title 18, United States Code, Section 7(9)(B) provides that, with respect to offenses committed by or against a national of the United States, the "special maritime and territorial jurisdiction of the United States" includes residences in foreign States and the land appurtenant or ancillary thereto, irrespective of ownership, used for purposes of United States diplomatic,

consular, military, or other United States Government missions or entities in foreign states, or used by United States personnel assigned to those missions or entities.

## Jurisdiction and Venue

5.     The U.S. Peace Corps is a United States Government entity operating in the Republic of Fiji (hereafter "Fiji"), as well as in other foreign states.  Government Quarters number 70, Savusavu, Fiji, is a residence in Savusavu, Vanua Levu,  Fiji, used by Peace Corps Volunteers (PCVs) for their residential use while assigned to Savusavu, Fiji.  The Public Service Commission of Fiji, through the Provincial Administrator in Savusavu, assigned this small house to Peace Corps as a host country contribution to Peace Corps efforts.  Peace Corps Volunteer (PCV) Andrea Perloff has lived in Government Quarters 70, Savusavu, Fiji as her residence since approximately March 2014.  PCV Perloff is a U.S. citizen and is a PCV assigned to the U.S. Peace Corps, as a Volunteer.  Accordingly, her residence falls under the Special Maritime and Territorial Jurisdiction of the United States, pursuant to 18 U.S.C § 7(9)(B).

## Details of the Investigation

6.     On October 7, 2014, Senior Special Agent (SSA) Joseph Bodensteiner, a criminal investigator assigned to U.S. Peace Corps, Office of Inspector General (OIG), Washington, DC, received an electronic mail message (email) from Country Director (CD) Eddie Stice, U.S. Peace Corps, Fiji, that a female PCV (hereafter identified by the initials "C.O.") assigned to U.S. Peace Corps, Fiji, had reported that a male PCV had sexually assaulted her in another PCV's residence. CD Stice referred the information to OIG for investigation.

7.     On October 8, 2014, SSA Bodensteiner contacted C.O. by phone at which time she shared many of the details of the assault.  Specifically, C.O. identified PCV Nicholas Langford as her assailant.  On October 18, 2014, SSA Bodensteiner and SA Jennifer Pallotta departed

Washington, DC, for Fiji to conduct the investigation.  On October 21, 2014,[1] SSA Bodensteiner and SA Pallotta interviewed Langford at the U.S. Peace Corps Office in Suva, Fiji.  The following day, on October 22, 2014, SSA Bodensteiner and SA Pallotta interviewed C.O. in Fiji.

8.      C.O. told SSA Bodensteiner on the phone and in the subsequent in-person interview that she and Langford dated casually and intermittently for approximately nine months to one year prior to the sexual assault.  C.O. stated that in the past she and Langford had engaged in sexual activities, but not intercourse.  C.O. further stated that Langford knew from conversations with her that she was a virgin and that she would not engage in vaginal or anal intercourse with him.

9.      C.O. stated that on or about July 14, 2014, she and Langford shared a spare bedroom while staying overnight in PCV Perloff's residence in Savusavu, Fiji.  C.O. slept on a foam mattress on the ground next to Langford, who slept on an inflatable camp mattress that he brought with him.  C.O. woke on the morning of July 15, 2014, sometime between 5:00 a.m. and 7:00 a.m., to find Langford kissing and touching her.  C.O. stated that she did not reciprocate Langford's advances.  C.O. said that Langford asked her what was wrong, and if she wanted this. C.O. replied, "No, I'm sleepy, I'm sorry." C.O. said Langford began trying to kiss her again. Langford then removed C.O.'s leggings and underwear and thrust his penis against her vagina. C.O. said, "Stop, it hurts." C.O. said she had tears in her eyes.  C.O. recalled that the bedroom was sufficiently lit to see each other's facial expressions.  Langford then got to his knees, and told her to turn over but C.O. did not move.  Langford grabbed C.O. and flipped her onto her hands and knees.  C.O. stated that when he flipped her over, she landed on his inflatable camp mattress, which was next to her foam mattress.  Langford then put his hands on her thighs, forcibly inserted his penis into her anus causing her substantial pain, and had anal intercourse with her for approximately 30 seconds.  C.O. said that during that time, she cried at various

---

[1]   The dates of events occurring in Fiji reflect Fiji date and time as Fiji is across the International Date Line.

volumes that Langford should have heard.  Langford then removed his penis from her anus, turned her over, and masturbated until he ejaculated onto C.O.'s body.  Langford left the bedroom to take a shower.

10.     Once Langford left the room, C.O. remained on her back on the camp mattress for several minutes.  C.O. then put her clothes back on and used her telephone to send a text message to Dr. Josephine Piukala, the Peace Corps Medical Officer (PCMO), to ask PCMO Piukala to send her information about the sexual assault policy.  C.O. said that when Langford returned, she went to shower.  C.O. removed her clothes and observed that her underwear was covered in blood and that she was bleeding from her rectum. While showering, C.O. watched blood run down her leg and vomited.

11.     C.O. stated that she may have bled onto the inflatable camp mattress when she was laying on it for several minutes after the assault.  C.O. stated that the aforementioned incident was the only time she had ever been on Langford's inflatable camp mattress.  C.O. further stated that she was not menstruating at the time.

12.     C.O. described the mattress as a 1-inch thick collapsible, inflatable camping mattress, constructed of a plastic-like material, which may or may not have had a cover.  C.O. said that Langford brought the mattress with him on the trip which included the overnight stay at PCV Perloff's residence.  C.O. said that the mattress is stored in a sleeve or a bag. C.O. stated that the mattress would have cost Langford approximately $100, and she did not think that he would have discarded it before leaving Fiji to return to the United States.  Accordingly, there is probable cause to believe that there is blood or other bodily fluids on Langford's inflatable camp mattress that is evidence of the crimes in violation of 18 U.S.C. §§ 2241, 2242, and 2244.

13.     After the assault, on the evening of July 15, 2014, C.O. left Perloff's residence to travel to the PCMO office.  C.O. stated that Langford left at the same time and traveled with her on the ferry.  C.O. said she saw Langford sleeping on the same inflatable camp mattress on the deck of the ferry.

14.     SSA Bodensteiner and SA Pallotta also interviewed Langford in connection with their investigation.  Specifically, on October 21, 2014, SSA Bodensteiner and SA Pallotta interviewed Langford at the U.S. Peace Corps Office in Suva, Fiji.  Prior to the commencement of the interview, Langford was advised of his constitutional rights.  Langford acknowledged that he understood his rights, which he waived verbally and in writing.  The interview was audio recorded.

15.     Langford stated that he knew that C.O. was a virgin, and that she would not consent to vaginal or anal intercourse with him.  Langford stated that on or about the morning of July 15, 2014, he and C.O. were staying at Perloff's residence in Savusavu, Fiji.  Langford stated that he kissed C.O. and she told him, "Stop. I'm tired."  Langford said he pulled C.O.'s leggings and panties off and rubbed his penis against C.O.'s vagina.   Langford stated that shortly thereafter C.O. was on her hands and knees, and he brought himself to his knees.  Langford stated that at some point, C.O. told him, "Stop.  That hurts."  Langford replied, "But it feels good."  Langford said he heard her crying.  Langford stated that after approximately 10 seconds, he withdrew his penis from C.O.'s anus after C.O. told him to stop.  He then turned C.O. over to her back and masturbated until he ejaculated onto C.O.'s body.

16.     Immediately following the interview, Langford was taken to the airport where he boarded a flight for the United States, escorted by a Peace Corps Medical Officer.  Langford was being medically evacuated from Fiji because, prior to the arrival of SSA Bodensteiner and SA Pallotta,

Langford told a counselor at the Peace Corps Office of Medical Services that he wanted to hurt himself.

17.     As their more thorough in-person interview with C.O. did not occur until the day after Langford's departure, SSA Bodensteiner and SA Pallotta did not learn the evidentiary value of the inflatable camp mattress until after Langford left the country.  Following the interview of C.O., SSA Bodensteiner checked to determine Langford's location.  According to Langford's travel itinerary, he had already entered the United States and was in transit to Washington, DC.

18.     SSA Bodensteiner was advised that Langford had been instructed by Peace Corp personnel to take all of his belongings with him prior to leaving Fiji as his departure was permanent.  SSA Bodensteiner further learned that Langford left the key to his apartment with a neighbor.  On October 23, 2014, after Langford was medically evacuated and had departed Fiji, SSA Bodensteiner searched Langford's abandoned apartment for the inflatable camp mattress.[2] No item fitting the description of the camp mattress was observed.  A further check of the surrounding area, the yard and nearby garbage receptacles also did not disclose the camp mattress.  Agents noted that Langford did not leave anything of value behind in the apartment.

19.     The affiant is advised by Peace Corps personnel that PCVs do not receive substantial pay for their position.  Rather, volunteers receive a stipend that is no more than a few hundred dollars per month.  The affiant is further advised that PCVs generally take any items of value with them when they permanently return to the United States after their Peace Corp posting.  As set forth earlier, the inflatable camp mattress, as described by C.O., would likely be considered a thing of value.   Accordingly, there is probable cause to believe that Langford took the inflatable camp mattress with him when he departed Fiji.

_____

[2] As noted in fn. 1, given that Fiji is across the International Date Line, this search occurred on October 22, 2014 on Eastern Standard Time.

19.     Upon his arrival at Dulles International Airport, from Fiji, on October 22, 2014, Langford was met by Peace Corps headquarters staff, who observed a large black duffel bag, a small black duffel bag, and a backpack in his possession.  Langford's luggage is of sufficient size to contain the inflatable camp mattress.

20.     From Dulles International Airport, Langford was taken by Peace Corps headquarters staff to the Georgetown Suites hotel, located at 1111 30th Street, NW, Washington DC.  Langford checked into Room 311 of the hotel, taking his luggage with him.  Accordingly, there is probable cause to believe that the inflatable camp mattress is in the large black duffel bag or the small black duffel bag or the backpack that Langford brought back with him from Fiji or has otherwise been unpacked and is in the hotel room.

### Conclusion

21.     Your affiant believes that there is probable cause to support that Nicholas Langford violated 18 USC §§ 2241, 2242 and 2244, and that evidence of these offenses, as fully described in Attachment B, is located in Langford's hotel room, as fully described in Attachment A.

Respectfully submitted,

_____
Angela Page
Special Agent
United States Department of State
Diplomatic Security Service


Subscribed and sworn to before me this 22rd day of October 2014.


_____
The Honorable Deborah A. Robinson
United States Magistrate Judge